

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*James O'Donohue*
*Assistant United States Attorney*
*James.O'Donohue@usdoj.gov*

*36 S. Charles Street*
*Suite 400*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4985*
*CELL: 443-525-9311*
*MAIN: 410-209-4800*

March 21, 2024

The Honorable Adam B. Abelson
United States Magistrate Judge
101 W. Lombard Street
Baltimore, Maryland 21201

> Re:     **United States v. Darnell Fields**
>          **Criminal No. RDB-24-062**

Dear Judge Abelson:

The Defendant, Darnell Fields, is scheduled to appear before the Court on March 22, 2024, at 1:30 p.m. for a detention hearing. On January 27, 2024, the Defendant was charged with violating 18 U.S.C. 922(g) (possession of a firearm and ammunition by a prohibited person) for possessing a firearm and ammunition on November 18, 2023. The Defendant had an initial appearance on the charge on March 4, 2024.

For the reasons outlined below, the Government agrees with Pretrial Services that there is no condition or combination of conditions, short of detention, to reasonably ensure the safety of the community and respectfully submits that there is also no combination of conditions to ensure the Defendant's appearance in Court.

### I.      Factual Background

On November 18, 2023, at approximately 5:45 p.m., Baltimore Police Department (BPD) Detective James Dow and BPD Detective Cesar Gonzalez were driving in an unmarked patrol vehicle northbound in the 5000 block of Beaufort Avenue in Baltimore. Detective Gonzalez, who was driving, observed a group of approximately seven people standing at the entrance of an alley around a bonfire. Knowing that it was a high-crime area, Detective Gonzalez drove down the middle of the alley to investigate further. While most of the men dispersed, Darnell Fields started walking towards the patrol vehicle with an associate named Michael Carter following behind.

Detective Dow saw Darnell Fields (who at this point appeared to realize that the officers were approaching) pull a black ski mask out of his pocket and throw a black object that had been inside the ski mask approximately 15 feet away into the grass. Detective Dow and Detective Gonzalez got out of their vehicle to investigate further. Detective Dow stopped Fields temporarily while Detective Gonzalez searched the grass where Fields threw the object. After approximately 20 seconds, Detective Gonzalez found a black revolver handgun (H&R model 732 revolver serial

#AH64895) loaded with 3 live .32 caliber cartridges in the grass where Fields threw the black object. The revolver was warm, indicating that it had been in close contact to Fields (the temperature outside was 46 degrees), and Fields was placed under arrest. Carter was also arrested since he possessed drugs.

Additionally, law enforcement reviewed a jail call that Carter made the next day. Carter told an unknown person that "Pooh" had previously asked him questions about the gun that was recovered. Carter said, "…and I'm showing him the joint cause Yo was getting ready to go around and do *that*…" He continues to say that "Pooh" asked him "how many are in there" and "which way it would spin," to which Carter told him to "open it up and look." Note that in his prior conviction, Darnell Fields was referred to throughout the case as "Pooh". *See Fields v. State*, 432 Md. 650 (2013). The recovered firearm was a revolver, in which the cylinder revolves, or "spins", when fired. Not only does this information further corroborate that Fields possessed the firearm, but it also seems to indicate that Fields was preparing to actually use it if he had not been arrested.

## II.     Legal Standard and Analysis of 18 U.S.C. § 3142 Factors

The Government's burden when seeking detention based on community safety is clear and convincing evidence, and a preponderance of the evidence to determine whether the defendant is a flight risk. *United States v. Anderson*, No. ELH-19-302, 2020 WL 1929440, at *2 (D. Md. Apr. 20, 2020). When seeking a detention order, the Government may proceed by proffer of evidence. *See United States v. White*, 2015 WL 2374229, at *2 (D. Md. May 15, 2015). The factors a court must consider in determining whether a defendant shall be detained pending trial are outlined by 18 U.S.C. § 3142(g). The factors are as follows:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a . . . a controlled substance [or] firearm;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person . . . ; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

In the instant case, the § 3142 factors establish that the Defendant should be detained pending trial.

### a.   Nature and Circumstances of the Offense

Here, the defendant possessed a loaded firearm in a high-crime area, and when police officers approached him, he discarded the firearm into a nearby patch of grass. What makes the firearm possession especially alarming is that the defendant (1) is prohibited from possessing a firearm from a prior violent conviction and (2) his nearby associate was in possession of drugs packaged for distribution. Firearm offenses are inherently more dangerous as they present an opportunity for potential violence. When these aggravating factors are considered, the offense is even more serious.

### b.  Weight of the Evidence

As detailed above, the weight of the evidence against the Defendant is strong. As BPD officers approached the Defendant in a vehicle, Detective Dow observed the defendant toss a dark, hard object onto a nearby grassy area. As he detained the Defendant, Detective Gonzalez went to the grassy area to find the object, and, within approximately 20 seconds of searching, found the gun. The recovery of the firearm is captured on body worn camera footage. Moreover, Carter's jail call the next day corroborates that Fields possessed the firearm.

### c.  History and Characteristics of the Defendant

The Defendant has been arrested many times in his life, leading to two convictions – a 1999 Maryland conviction for Possession with Intent to Distribute Narcotics and a 2015 Maryland conviction for Assault in the Second Degree. The underlying facts of the assault conviction, however, are far more serious than the conviction itself would seem to indicate. The Defendant was initially convicted of Assault in the First Degree and Conspiracy to Commit First Degree Murder as the Defendant along with his co-Defendant carried out a contract killing by shooting two men on the doorstep of a home, leaving one of the two men dead. The case received considerable media attention.  *See* Justin Fenton, *Man Whose Murder Convictions Were Twice Overturned Pleads to Reduced Sentence*, Baltimore Sun, July 10, 2015. After multiple appeals, the Defendant's conviction was overturned[1], and the Defendant ultimately pled guilty to the reduced charge of Assault in the Second Degree. Clearly, this violent incident is not fully encapsulated by the misdemeanor conviction of Assault in the Second Degree.

Beyond these criminal convictions, the Pretrial Services Report (PSR) details a history of failing to comply with supervision and other indicators of risk of flight. As noted in the PSR, the Defendant has one alias, one variation of his true name, and two dates of birth. At the time of his arrest in this case, the Defendant was unemployed. He also violated his probation on the aforementioned Assault in the Second Degree case in Maryland, leading to the termination of his probation in 2021.

Taken together, the Defendant has clearly demonstrated an inability to comply with conditions of release. In addition to the community risk if the Defendant is released, there would also be a serious risk of his non-appearance in Court.

### d.  Danger to the Community

This Section 3142 factor also counsels in favor of detention pending trial. As discussed at length above, this case is not the Defendant's first firearm related interaction with the criminal justice system. Indeed, he spent a decade incarcerated for a conviction that stemmed from his involvement with a firearm. The Defendant has demonstrated that if released, he cannot stay away from firearms, thereby presenting a real danger for the community.  Moreover, Carter's jail call

---

[1] The case appears to have been overturned, in large part, because one of the lead detectives had been involved in an overtime fraud scheme, and the defense did not have access to the IAD files at the time of trial.

indicates that the Defendant was planning to use the firearm, further demonstrating he poses a danger to the community if released.

### III.    Conclusion

For the reasons stated above,  there is no condition or combination of conditions that would reasonably assure the safety of the community and the Defendant's appearance in Court.  The Government respectfully requests that the Defendant be detained pending trial.

Respectfully Submitted,

Erek L. Barron
United States Attorney

*James O'Donohue*

James O'Donohue
Assistant United States Attorney

Cc via e-mail Sasha Garcon

4